UNITED STATES of America, Plaintiff,

v.

METROPOLITAN DADE COUNTY, FLORIDA, et al., Defendants.

No. 93–0485–CIV.

United States District Court, S.D. Florida.

March 13, 1993.

Stuart M. Gerson, Acting Atty. Gen., James P. Turner, Acting Asst. Atty. Gen., Steven H. Rosenbaum, Chief, Voting Sect., Civ. Rights Div., Rebecca J. Wertz, James Vigil, Elizabeth Johnson, Attorneys Voting Sect., Civ. Rights Div., Dept. of Justice, Washington, DC, Roberto Martinez, U.S. Atty., Veronica Harrell–James, Asst. U.S. Atty., Miami, FL, for plaintiff.

Robert A. Ginsburg, Dade County Atty., Murray A. Greenberg, First Asst. County Atty., R.A. Cuevas, Jr., Asst. County Atty., Miami, FL, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

HIGHSMITH, District Judge.

THIS CAUSE comes before the Court upon Plaintiff United States of America's ("United States") motion for a temporary restraining order, filed March 11, 1993.

### BACKGROUND

Metropolitan Dade County ("Dade County") has scheduled special elections for county commissioners ("special elections") for March 16, 1993. These special elections are being held in response to a federal district court's ruling that Dade County's prior at-large county commissioner election system violated Section 2 of the Voting Rights Act, as amended, 42 U.S.C. § 1973, by diluting black and Hispanic voting strength. *Meek v. Metropolitan Dade County*, 805 F.Supp. 967 (S.D.Fla.1992), *aff'd*, 985 F.2d 1471 (11th Cir. 1993).

The special elections will result in the election of county commissioners for thirteen single-member districts. In districts where a candidate does not receive a majority vote, run-off elections will be held on April 20, 1993. In February, 1993, Dade County determined that it would benefit voters to print and disseminate a pamphlet explaining the changes in the new election system that resulted from the *Meek* decision. After substantial research and consultation between Dade County's Election Department, Communications Department, and the Office of the County Attorney, Dade County reached the conclusion that it was prohibited from publishing and disseminating the proposed pamphlet in Spanish by Dade County Local Ordinance Sec. 2–11.18. Consequently, the Dade County Department of Communications only produced an English-language voter information pamphlet. This pamphlet was mailed to over 400,000 voter households during the first week of March, 1993.

The pamphlet describes the new system of electing county commissioners in Dade County and provides answers to the following twelve questions about the special elections:

(a) Why are there 13 districts instead of the previous nine member Board of County Commissioners?;

(b) How many county commissioners will I be voting for?;

(c) Will I be voting for a mayor?;

(d) Didn't Dade County voters recently approve an executive mayor form of government?;

(e) Will there be a runoff election after the March 16 vote?;

(f) When will the new system take effect?;

(g) How long will the terms of office be for the newly elected Board of County Commissioners?;

(h) Have county commission elections been permanently changed to March and April?;

(i) Can I still register to vote for this special election?;

(j) I'm registered as an independent. Will I be able to vote for a district commissioner?;

(k) How do I know what county commission district I'm in?;

(*l*) Are there any other countywide issues on the March 16 special election ballot? The pamphlet provides brief answers to each of these questions, and it also provides a chart listing the precincts that fall under each new district.

On March 11, 1993, the United States filed a complaint challenging Dade County's publication of the pamphlet in English only and requested the entry of a temporary restraining order against Dade County. The United States contends that Dade County's failure to publish and distribute a Spanish-language voter information pamphlet is a violation of Section 203 of the Voting Rights Act of 1965, as amended. The United States has not asked the Court to enjoin the March 16th election. The United States, however, requests that the Court issue a temporary restraining order requiring Dade County and the other named defendants (collectively, "Dade County") to:

(1) translate, publish and distribute copies of the pamphlet to county offices, public libraries, post offices and Hispanic community organizations;

(2) have a sufficient number of copies of Spanish-language versions of the pamphlet available at all polling places on election day;

(3) place advertisements of the Spanish-language version of the pamphlet in Spanish-language newspapers and English-language newspapers of general circulation to run on Sunday, Monday and Tuesday, March 14, 15, and 16, 1993; and

(4) place advertisements or public service announcements on Spanish-language radio and television stations to run from the time the Court issues the order until the polls have closed on election day, informing the voters of the contents of the pamphlet and where Spanish-language versions are available.

In its response to the United States' Motion, Dade County states that it plans to publish a verbatim translation of the pamphlet in Spanish in *El Nuevo Herald* and *Diario Las Americas* on Sunday, March 14, 1993. These two Spanish-language newspapers have a combined local circulation of approximately 191,000 readers. On the same date, Dade County is publishing a bilingual sample ballot in a variety of English and Spanish-language newspapers in Dade County. Dade County argues, however, that it will not be able to comply with the entire request of the United States prior to the March 16 election date.

On March 12, 1993, the undersigned District Judge requested the designation of a three-judge panel, pursuant to 28 U.S.C. § 2284(b)(1), for the ultimate adjudication of this case. Later that same day, United States Chief Circuit Judge Gerald B. Tjoflat convened a three-judge panel consisting of the undersigned District Judge, United States District Judge Stanley Marcus and United States Circuit Judge Peter T. Fay. The Court determined that the three-judge panel was not necessary for the disposition of the plaintiff's motion for a temporary restraining order. An evidentiary hearing was held by the undersigned District Judge on March 13, 1993.

## STANDARD OF REVIEW

■ To grant a temporary restraining order, the moving party must demonstrate that:

(1) there is a substantial likelihood that the moving party will prevail on the merits;

(2) the moving party will suffer irreparable injury if the injunction is not granted;

(3) the threatened injury to the moving party outweighs the threatened harm the proposed injunction may cause the opposing party; and

(4) the injunction, if issued, would not be adverse to the public interest.

*Johnson v. U.S. Department of Agriculture,* 734 F.2d 774, 781 (11th Cir.1984). *See also Levas and Levas v. Village of Antioch,* 684 F.2d 446, 448 (7th Cir.1982) (Noting that the standard of review for a temporary restraining order is the same as the standard of review for a preliminary injunction).

## FINDINGS

### A. Substantial Likelihood of Prevailing on the Merits

The purpose of the Voting Rights Act of 1965 was and is to "promote practical imple-

1478

mentation of the Fifteenth Amendment, and to ensure that no citizen's right to vote is denied or abridged on account of race." *NAACP v. New York,* 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973). In interpreting provisions of the Voting Rights Act, the Supreme Court has directed that it be given a broad construction. *Allen v. State Board of Elections,* 393 U.S. 544, 565, 89 S.Ct. 817, 831, 22 L.Ed.2d 1 (1969).

■ Section 203 of the Voting Rights Act of 1965 provides that:

> Whenever any State or political subdivision subject to the prohibition of subsection (b) of this section provides **any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots,** it shall provide them in the language of the applicable minority group as well as in the English language.

42 U.S.C.A. § 1973aa–1a(c) (West 1981 & Supp.1992) (emphasis added).

Dade County essentially contends that the pamphlet is not subject to Section 203 of the Voting Rights Act because the pamphlet is not a necessary procedural document issued prior to and during an election, such as a notice of polling places or a sample ballot. The Court concludes, however, that the pamphlet is covered under the plain language of Section 203 as "assistance or other materials or information relating to the electoral process." *Id.* Moreover, an administration interpretation of the pertinent language suggests that:

> The quoted language should be broadly construed to apply to all stages of the electoral process, from voter registration through activities related to conducting elections, including for example the issuance, at any time during the year, of notifications, announcements, or other informational materials concerning the opportunity to register, the deadline for voter registration, the time, places and subject matter of elections, and the absentee voting process.

28 C.F.R. § 55.14 (1987). Although this interpretation is only suggestive, and not a mandatory interpretation, it is consistent with the central purpose of Section 203 of the Voting Rights Act. In this instance, the pamphlet distributed by Dade County not only explains the changes in the election format, but it also informs voters when to register, when to vote, and where to vote in the election. Consequently, the Court finds, for the purposes of the United States' motion for temporary restraining order, that Dade County's failure to publish the pamphlet in Spanish violates Section 203 of the Voting Rights Act. Accordingly, the Court finds that the United States has demonstrated a substantial likelihood of prevailing on the merits.

### B. Irreparable Injury

■ Dade County's failure to disseminate the election pamphlet in Spanish will cause irreparable injury to the Hispanic community in Dade County. Such injury will not be severe, because of Dade County's plans to publish a Spanish-language version of the pamphlet on March 14 in Dade County's two largest local Spanish-language newspapers. Nevertheless, the Court finds that the United States has demonstrated that Dade County's Hispanic community will suffer irreparable harm absent some measure of relief from this Court.

### C. Relative Harm

■ The Court finds that the harm to the voters who are protected by the Voting Rights Act outweighs the harm that the County must bear in complying with the measures of relief that the Court will prescribe.

### D. Public Interest

In Dade County, where the special elections are being held to remedy the longstanding vote dilution of Hispanics and blacks, the public interest is best served by seeing that all voters are fully informed about the new system of election. The Court finds, therefore, that the Court's Order is in the public interest.

### DISCUSSION

■ Where an impending election is imminent and the election machinery is already

in progress, a Court may take into account equitable considerations when prescribing immediate relief. *Reynolds v. Sims,* 377 U.S. 533, 585, 84 S.Ct. 1362, 1393, 12 L.Ed.2d 506 (1964). Accordingly, the Court finds that drastic steps are neither required nor appropriate at this juncture. Specifically, the Court does not find it necessary to postpone the March 16th election. Moreover, the potential harm arising from the violation has been partially cured by Dade County's planned publication of the translated pamphlet in the community's primary Spanish-language newspapers—*El Nuevo Herald* and *Diario Las Americas*—presently scheduled for Sunday, March 14, 1993. These scheduled publications shall take place as planned. In addition, Dade County shall make every attempt to extend these publications to the Monday, March 15, 1993 and the Tuesday, March 16, 1993 editions of *El Nuevo Herald,* as well as the Monday-distribution edition of *El Diario Las Americas.*

Finally, Dade County shall elect one of the following steps:

(1) Print a Spanish-language version of the pamphlet and deliver sufficient copies of the translated pamphlet to every precinct in Dade County prior to the opening of the polls on Tuesday, March 16, 1993. Dade County shall instruct the precinct clerk to display these pamphlets in a prominent place, with a sign that alerts voters of their availability; or

(2) Prepare posters, not less than three feet by five feet, containing an enlarged Spanish-language version of the pamphlet and deliver one poster to every precinct in Dade County prior to the opening of the polls on Tuesday, March 16, 1993. Dade County shall instruct the precinct clerk to place the poster in a prominent place.

Because the Court finds that these measures are sufficient, the Court denies the other relief requested by the United States in its motion for temporary restraining order. All other relief sought in this action shall be addressed by the three-judge panel designated for the ultimate adjudication of this case.

## CONCLUSION

Based on the foregoing considerations, the United States's motion for temporary re-

straining order is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to the relief prescribed by this order, and the motion is DENIED as to the remaining relief sought by the United States.

DONE AND ORDERED.