661 F.2d 1027
 1 Ed. Law Rep. 44
 Robert KITE, as next friend of Greg Kite, Plaintiff,
Dell Harris, as next friend of Larry Harris, et al.,
Intervenors-Appellees,
v.
Bailey MARSHALL, Individually and as Director, University
Interscholastic League, et al., Defendants-Appellants.
Robert H. LACKNER, Individually and as next friend of Mark
Lackner, Plaintiff-Appellee,
v.
Bailey MARSHALL, Individually and as Director, University
Interscholastic League, et al., Defendants-Appellants.
 No. 80-1847.
 United States Court of Appeals,
Fifth Circuit.*
 Nov. 20, 1981.
 
 Robert W. Gauss, Asst. Atty. Gen., Austin, Tex., for defendants-appellants.
 Hellums & Steffey, Dean H. Steffey, Houston, Tex., for Del Harris, etc.
 Garza & Garza, David C. Garza, Brownsville, Tex., T. Gerald Treece, Houston, Tex., for Robert H. Lackner, etc.
 Appeals from the United States District Court for the Southern District of Texas.
 Before BROWN, GEWIN** and POLITZ, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 These consolidated actions challenge the validity of Section 21 of Article VIII of the Constitution and Contest Rules of the University Interscholastic League (UIL) of Texas. The challenged section suspends for one year the varsity athletics eligibility of any high school student who attends certain training camps.[1] The district court, 494 F.Supp. 227, enjoined the enforcement of section 21 and subsequently declared the rule unconstitutional as applied. We reverse.
 
 
 2
 UIL is a voluntary, non-profit association of public schools below collegiate rank in the State of Texas. It functions as an integral part of the Division of Continuing Education of the University of Texas at Austin. Its stated objective is "to foster among the public schools of Texas interschool competitions as an aid in the preparation for citizenship." In pursuit of this goal, UIL promulgates rules and regulations governing various aspects of competition in speech, journalism, literary and academic contests, drama, music and athletics. Although a private organization, UIL's functioning constitutes state action subject to the limitations of the fourteenth amendment to the Constitution. See, e. g., Walsh v. Louisiana High School Athletic Ass'n., 616 F.2d 152 (5th Cir. 1980), cert. denied, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981). We must determine whether section 21 violates either the due process or equal protection clause of that amendment.
 
 
 3
 The district court found section 21 to be constitutionally infirm because it infringed protected parental authority in the child-rearing arena. Appellees exhort us to affirm the trial court's conclusions, principally relying on the "family choice doctrine" which has its genesis in Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). We cannot accept the invitation.
 
 
 4
 The Meyer and Pierce decisions are based on the premise that the state has no power to "standardize its children," Pierce v. Society of Sisters, 268 U.S. at 535, 45 S.Ct. at 573, or to "foster a homogeneous people," Meyer v. Nebraska, 262 U.S. at 402, 43 S.Ct. at 628, by foreclosing the opportunity of individuals "to heed the music of different drummers." L. Tribe, American Constitutional Law, § 15-6, at 903 (1978). In a thoughtful analysis of Meyer and Pierce, Professor Tribe opined:
 
 
 5
 One subsequent explanation of their joint import has been that they demonstrated judicial solicitude for the Catholics in Oregon and the Germans in Nebraska against whom the invalidated statutes had evidently been directed because of the inability of those groups adequately to safeguard their interests through the political processes of their states. That notion is worth stressing as illustrative of a general technique-that of assessing alleged invasions of personhood in their historical and social context.... A rule that might be sustained as a proper expression of community interest were it to affect the population as a whole might thus be invalidated as a violation of personality when it operates to single out, if not to submerge, a distinct group in the society.
 
 
 6
 L. Tribe, supra, § 15-6, at 904 (footnotes omitted) (citing United States v. Carolene Prods. Co., 304 U.S. 144, 152-53 n.4, 58 S.Ct. 778, 783-84, 82 L.Ed. 1234 (1938)). Such concerns are not present in the matter now before us.
 
 
 7
 Appellees cite as controlling precedent a line of Supreme Court decisions[2] which purportedly recognize the existence of a "private realm of family life which the state cannot enter," Prince v. Massachusetts, 321 U.S. at 166, 64 S.Ct. at 442, absent compelling reasons. Uncertainty abounds, not only as to the constitutional spring from which this family privacy right flows, but also as to its definition and character.
 
 
 8
 Recent decisions by the Supreme Court declaring that parents have no constitutional right to educate their children in private segregated academies, Runyon v. McCrary, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), or to demand approval before the administration of corporal punishment in school, Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), or to exercise an absolute veto power over a minor child's decision to terminate a pregnancy via abortion, Planned Parenthood v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976), clearly signal that parental authority falls short of being constitutionally absolute. Confronted with these situations which, at first blush, appear to rest at the heart of parental decision making, the Supreme Court refrained from clothing parental judgment with a constitutional mantle.
 
 
 9
 The instant case presents a similar inquiry. Reduced to essentials, the legal questions posed are: (1) whether parents possess a fundamental right to send their children to summer athletic camps; and (2) whether the children have a constitutional right to attend such activities. As is frequently the case, in the very postulation of the questions the answer lies. A negative response to both questions is mandated. This case implicates no fundamental constitutional right.
 
 
 10
 The determination that no fundamental right to participate in summer athletic camp exists establishes the level of scrutiny to which we must subject section 21. The regulation will pass constitutional muster if it is found to have a rational basis.
 
 Due Process
 
 11
 The UIL contends that its rules are designed to make competition among its 1,142 member schools as fair and equitable as possible. The UIL program, including the athletics component, is only a part of the overall educational process. Several reasons are advanced in support of section 21, including the need to control over-zealous coaches, parents and communities, the achieving of a competitive balance between those who can afford to attend summer camp and those who cannot, the avoidance of various excessive pressures on students, and the abrogation of the use of camps as recruiting mechanisms.
 
 
 12
 It cannot be argued seriously that section 21 is wholly arbitrary and totally without value in the promotion of a legitimate state objective. We do not evaluate the ultimate wisdom, vel non, of section 21, or the sagacity of its methodology. The school authorities have concluded that section 21 serves the purpose of making interscholastic athletics fairer and more competitive. We are not prepared to say that section 21 bears no meaningful relationship to the achievement of that ideal. The due process clause of the fourteenth amendment has not been offended. See City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).
 
 Equal Protection
 
 13
 Traditionally, the equal protection analysis has been performed against the backdrop of the standards of strict scrutiny and minimum rationality. To withstand strict scrutiny, a statute must necessarily relate to a compelling state interest. Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). The rational basis test requires only that the legislation or regulation under challenge rationally promote a legitimate governmental objective. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).[3]
 
 
 14
 A state action viewed under the rational basis banner is presumed to be valid. In such a situation, "the burden is not upon the state to establish the rationality of its restriction, but is upon the challenger to show that the restriction is wholly arbitrary." Karr v. Schmidt, 460 F.2d 609, 617 (5th Cir. 1972) (en banc). Accordingly, only when a demonstration is made that the classification contained in the regulation is wholly arbitrary or does not teleologically relate to a permissible governmental objective is the equal protection clause violated. When "the classification created by the regulatory scheme neither trammels fundamental rights or interests nor burdens an inherently suspect class, equal protection analysis requires that the classification be rationally related to a legitimate state interest." Walsh v. Louisiana High School Athletic Ass'n, 616 F.2d 152, 160 (5th Cir. 1980), cert. denied, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981) (citing Parham v. Hughes, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979); City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); Jackson v. Marine Exploration Co., 583 F.2d 1336 (5th Cir. 1978)).
 
 
 15
 In view of the Supreme Court's prevailing opinions and our decisions in Walsh and Parish v. National Collegiate Athletic Association, 506 F.2d 1028 (5th Cir. 1975), we believe that the minimum rationality test provides the guide for our equal protection evaluation. See Denis J. O'Connell High Sch. v. Virginia High Sch. League, 581 F.2d 81 (4th Cir. 1978), cert. denied, 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979); Moreland v. Western Pa. Interscholastic, etc. League, 572 F.2d 121 (3d Cir. 1978).
 
 
 16
 Admittedly section 21 operates to treat student-athletes who attend summer athletic camps differently from those students who do not. The former lose eligibility in all varsity sports for the next year. But the categorization is not premised on impermissible, suspect grounds. Nor does the classification impinge upon the exercise of fundamental rights. The rule seeks to achieve a balance in interscholastic athletics. It is not unconstitutional.
 
 
 17
 The judgment of the district court, in these consolidated cases, is REVERSED.
 
 
 
 *
 Former Fifth Circuit case, Section 9(1) of Public Law 96-452-October 14, 1980
 
 
 **
 Due to his death on May 15, 1981, Judge Gewin did not participate in this decision; the case is being decided by a quorum. 28 U.S.C. § 46(d)
 
 
 [1]
 Article VIII, Section 21, provides:
 Training Camps Forbidden.-Any student who attends a special athletic training camp in football or basketball shall be ineligible for a period of one year from the date he enrolls in the camp for any athletic contest in the League. This does not apply to bona fide summer camps giving an over-all activity program to the campers or students.
 This section has been amended to limit the ineligibility to the sport involved in the special training.
 
 
 [2]
 See Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (striking a city ordinance prohibiting certain extended families from residence in the city); Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (state could not force the Amish to comply with compulsory education laws by sending their children to school beyond the eighth grade); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (invalidation of state law forbidding attendance at private schools); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (striking of state statute prohibiting the teaching of foreign languages)
 
 
 [3]
 For a recent comparison of strict scrutiny, rational basis and the developing intermediate level of examination, see Seoane v. Ortho Pharmaceuticals, 660 F.2d 146 (5th Cir. 1981)