United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 2,  2003**

Charles R. Fulbruge III
Clerk

REVISED JUNE 17, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 02-10351

KAREN JO BARROW,

Plaintiff-Appellant,

versus

GREENVILLE INDEPENDENT SCHOOL
DISTRICT, ET AL.,

Defendants,

HERMAN SMITH, DR.,

Defendant-Appellee.

Appeal from the United States District Court for
the Northern District of Texas
_____

Before KING, Chief Judge, REAVLEY and STEWART, Circuit Judges.

REAVLEY, Circuit Judge:

Karen Jo Barrow claims that she was denied a public-school position because her

children attended private school, an alleged violation of her constitutional right to educate

her children in private school.  The district court rendered summary judgment for the school superintendent, Dr. Herman Smith, on the ground of qualified immunity, and certified it as final.[1]  We reverse.

## BACKGROUND

Barrow was a classroom teacher within the Greenville Independent School District in July 1998 when she learned of an opening at the district's middle school for the position of assistant principal.  Barrow expressed her interest in the position, but was advised that to be considered for it she had to re-enroll her children in a public school.  Barrow and her husband met with Smith, then district superintendent, who told them that the district required that the children of all principals and administrators attend public school.  Barrow refused to comply with the district's policy, and as a result, the district did not consider her for the position of assistant principal.

Barrow initiated the instant action against the district and Smith under 42 U.S.C. § 1983.  Smith moved for summary judgment asserting qualified immunity, allowing the court to assume for that limited purpose that he decided not to promote Barrow in part because she chose to educate her children in a private school.  The district court determined that Barrow had failed to allege the violation of a clearly established constitutional right in 1998 and that Smith was therefore entitled to qualified immunity.

## DISCUSSION

---

[1]      See FED. R. CIV. P. 54(b).

Whether a public official is entitled to qualified immunity requires that the court pass on two questions.[2]  First, viewing the facts in a light most favorable to the plaintiff, the court must determine if the plaintiff has alleged the violation of a constitutional right.[3]  The second question (which we need address only if we answer the first question in the affirmative) requires the court to determine if the constitutional right was clearly established when the violation supposedly occurred.[4]  The right can be said to have been clearly established only if all reasonable officials in the defendant's position would have concluded that the challenged state action was unconstitutional.[5]

In her amended complaint, Barrow argued that Smith violated her right to select a private-school education for her children as guaranteed by the First Amendment and "the penumbra of familial privacy rights" (count I); her right under the Due Process Clause of the Fourteenth Amendment to direct the upbringing of her children (count II); and her right under the Free Exercise Clause of the First Amendment to provide a religious education for her children (count III).  We will consider these three claims together: at

---

[2]     Smith argues that even if we reverse the district court's determination that he is entitled to qualified immunity this court can affirm the judgment below by finding that Barrow would not have received the assistant principal position anyway.  He argues (1) that Barrow failed to complete a required written application for the position and (2) that the qualifications of other candidates were superior to Barrow's.  Never having reached the merits of Barrow's claims, the district court of course did not address these arguments.  On this record we cannot rule on these issues as a matter of law.

[3]     See Saucier v. Katz, 533 U.S. 194, 201 (2001).

[4]     See id.

[5]     See Cozzo v. Tangipahoa Parish Council, 279 F.3d 273, 284 (5th Cir. 2002).

3

bottom all aver that Barrow, a public-school employee, has a constitutionally-protected right to select a private-school education for her children. Our inquiry at this stage is limited to the question whether there is a recognized constitutional right and not whether that right is grounded in the First Amendment, the Fourteenth Amendment, or both.

Twenty years ago, in Brantley v. Surles,[6] we said that "[t]he parental interest in the direction and control of a child's education is central to the family's constitutionally protected privacy rights."[7] We also recognized that constitutional rights take on a different hue in the context of public-school employment in light of the state's interest "in promoting efficiency in the educational services which it provides through its school employees."[8] Thus, the state may restrict its employee's constitutionally-protected conduct "whenever that conduct materially and substantially impedes the operation or effectiveness of the [state's] educational program."[9] The question presented in Brantley was whether a Mississippi school district superintendent could lawfully terminate Brantley, an elementary-school cafeteria manager, who decided to transfer her son to a

---

[6]    718 F.2d 1354 (5th Cir. 1983).

[7]    Id. at 1358 (citing Meyer v. Nebraska, 262 U.S. 390 (1923), and Pierce v. Soc. of Sisters, 268 U.S. 510 (1925)). In Meyer, the Court recognized that parents have a protected liberty interest in the upbringing of their children under the Due Process Clause of the Fourteenth Amendment. 262 U.S. at 399-400. In Pierce, the Court held that the liberty interest described in Meyer protected the choice of parents to enroll their children in private school. 268 U.S. at 534-35.

[8]    Id. at 1359.

[9]    Id.

4

segregated private school. Brantley was white and worked in a predominately black public school. The superintendent testified that interracial dissension "might" occur if Brantley's son continued to attend the segregated private school.[10] We rejected this justification for terminating Brantley, concluding that it "was unsupported by any objective evidence."[11]

Several years later we decided Fyfe v. Curlee.[12] The plaintiff in that case, a secretary to a school principal, also decided to enroll her daughter in a segregated private school. As a result, the school superintendent transferred her to a menial position with no responsibility. Relying on Brantley, we affirmed that the Fyfe plaintiff had a protected right to select a private-school education for her child "under the First Amendment and the penumbra of familial privacy rights recognized by the Supreme Court."[13] In Fyfe, black families threatened to boycott businesses in the town in which the school district was located unless the district promised to not hire anyone whose children attended a segregated private school. However, the school district offered no evidence of a causal link between the threatened boycott and Fyfe's daughter's attendance of the private school. In the absence of evidence that Fyfe's choice of a private-school education for her daughter would substantially and materially interfere with the school district's

---

[10]    765 F.2d 478, 480 (5th Cir. 1985) (appeal following remand).

[11]    Id.; cf. Stough v. Crenshaw County Bd. of Educ., 744 F.2d 1479 (11th Cir. 1984).

[12]    902 F.2d 401 (5th Cir. 1990).

[13]    Id. at 403.

5

operations and effectiveness we held that Fyfe must prevail as a matter of law.[14]

Our decisions in Brantley and Fyfe leave no doubt that public-school employees like Barrow have a protected right to educate their children in private school. The state cannot take an adverse employment action against a public-school employee for exercising this right unless it can prove that the employee's selection of private school materially and substantially affects the state's educational mission. In this case, for purposes of this decision, Smith refused to consider Barrow for the position of assistant principal because her children attended private school. Refusal to promote is an adverse employment action.[15] Because Smith failed to present a fact issue that Barrow's children's attendance of a private school would negatively impair district operations were Barrow selected for assistant principal, the violation of a constitutional right is shown.

Brantley and Fyfe also confirm that the constitutional right of public-school employees to select a private-school education for their children was clearly established when Smith refused to consider Barrow for the position of assistant principal. Smith argues that Brantley and Fyfe do not give fair warning to all reasonable officials in his place that refusing to consider Barrow for the assistant principal position would be unconstitutional. Initially, we note that the question whether there was a clearly-established right does not turn on the existence of a court decision determining that

---

[14]     Id. at 405-06.

[15]     See Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997).

conduct identical to that which is at issue here is unlawful.[16]  Rather, the pertinent inquiry

asks "whether the state of the law [in 1998] gave [Smith] fair warning that [his] alleged

treatment of [Barrow] was unconstitutional."[17]  Smith points out that the plaintiff-school

employees in Brantley and Fyfe were in non-administrative positions, whereas Barrow

sought the position of assistant principal.  He suggests that requiring administrative

employees to enroll their children in public schools better serves the district's interest in

public confidence in the public school system than imposing a similar requirement on

non-administrative employees does.  Smith may be correct that the public tends to be

more attuned to the personal educational decisions of the school district's administrative

employees than of its other employees.  We may also assume that the district's interest in

public confidence in its schools is both legitimate and important.[18]  However, our

decisions in Brantley and Fyfe did not rest on a too-attenuated nexus between the public

confidence in public schools and the personal educational choices of cafeteria managers

---

[16]        See Anderson v. Creighton, 483 U.S. 635, 640 (1987).

[17]        See Hope v. Pelzer, 122 S. Ct. 2508, 2516 (2002).

[18]        Indeed, in some instances, the success of a public education program may depend on the perception that it is superior to that of both other public schools and private schools.  See Zelman v. Simmons-Harris, 122 S. Ct. 2460 (2002) (upholding a state law authorizing parents to assign tax dollars to another public school or to a private school upon their decision not to enroll their children in the schools of the public-school district in which they reside).  Further, it is conceivable, as Smith suggests, that the public might interpret the decision of one or more senior public-school employees to enroll their children in a private school as a vote of no-confidence in school district in which they work.  The burden of the school district would then be to prove that the private school placement materially and substantially impeded the operation and the effectiveness of the state's educational program.

7

and secretaries. Instead, those decisions rely on our recognition that (1) public-school employees enjoy a protected right to enroll their children in private school, and (2) a state action that interferes with this protected right is unsustainable unless proved to further a state interest. Brantley and Fyfe require the state to prove that a state action that interferes with protected educational choices of its public-school employees furthers the state's interest in the efficient operation of its schools. Nothing about those two decisions suggests that the state can forgo this burden with respect to its more senior employees.[19] We therefore hold that no reasonable official could conclude that the application of the school district's public-school patronage policy to Barrow was constitutional.[20]

REVERSED and REMANDED.

---

[19] In support of his claim that the right of public-school employees to enroll their children in private school is not clearly established, Smith offered the testimony of several professional educators, all of whom opined that patronage policies like the one in this case are lawful or are of uncertain legality. The question whether an asserted constitutional right is clearly established is one of law. Smith's subjective reasonableness has no place in our inquiry.

[20] In so holding, we express no opinion on the particular degree of scrutiny a state action must undergo to withstand a challenge to its constitutionality in a case like this one. Instead, we simply recognize that the state cannot strip its school employees of the right to choose a private-school education for their children without proving that the unfettered exercise of this right will undermine a state interest. Barrow and amici curiae argue that any state action that interferes with this right is subject to strict scrutiny. We need not take up this question today. In the absence of objective proof that Barrow's choice of a private-school education for her children will undermine a state interest the district's patronage policy fails irrespective of the degree of scrutiny applied.